CARMEN A. TRUTANICH, City Attorney
MICHAEL CLAESSENS, Senior Assistant City Attorney
CORY M. BRENTE, Supervising Assistant City Attorney
DENISE C. JOHNSON, Deputy City Attorney - (SBN191992)
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Email: denise.johnson@lacity.org
Phone No.: (213) 978-7032, Fax No.: (213) 978-8785

Attorneys for Defendants CITY OF LOS ANGELES,
OFFICER CHRISTOPHER WREN and OFFICER JAMES DIAMOND

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.D.R, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES, OFFICER CHRISTOPHER WREN, OFFICER JAMES DIAMOND, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: CV06-07466 VBF (MANx) <br> Complaint Filed: 11/21/06 <br><br> **DEFENDANTS NOTICE OF MOTION AND SECOND MOTION IN LIMINE TO BIFURCATE OR TRIFURCATE THE TRIAL AND EXCLUDE EVIDENCE OF THE FINANCIAL CONDITION OF DEFENDANT; ; MEMORANDUM OF POINTS AND AUTHORITIES;** <br><br> PTC DATE: January 21, 2010 <br> PTC TIME: 2:00 p.m. <br> PLACE: Courtroom 9 <br><br> Trial Date: February 9, 2010 <br><br> **U.S. District Judge** <br> **Valerie Baker Fairbanks** |

TO ALL PARTIES AND TO THEIR ATTORNEY OF RECORD HEREIN:

PLEASE TAKE NOTICE that Defendants CITY OF LOS ANGELES, OFFICER CHRISTOPHER WREN and OFFICER JAMES DIAMOND hereby move this Court on January 21, 2010 at 2:00 p.m., or as soon thereafter as this Court may hear said motion in limine, at the above-entitled Court, before jury selection or commencement of the trial, for an order trifurcating the trial into three phases as follows: (1) bifurcating liability issues from damages and punitive damages, and (2) determining the *Monell* issue, and (3)

1

precluding the introduction of any evidence of any of the Defendant Officers' financial condition and net worth unless and until the jury, if applicable, returns a verdict against the Defendant Officers and awards Plaintiffs' damages.

This Motion will be based on this Notice, the attached Memorandum of Points and Authorities, all records and pleadings on file in this action, and such other and further argument or evidence that may be permitted at the hearing.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on December 14, 2009.

DATED: December 28, 2009

        **CARMEN A. TRUTANICH**, City Attorney
        **MICHAEL L. CLAESSENS**, Senior Assistant City Attorney
        **CORY BRENTE**, Supervising Assistant City Attorney
        **DENISE JOHNSON**, Deputy City Attorney

By _____
        **DENISE JOHNSON**, Deputy City Attorney

*Attorneys for Defendants* **CITY OF LOS ANGELES, OFFICER CHRISTOPHER WREN, and OFFICER JAMES DIAMOND**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

By this motion, Defendants City of Los Angeles, Officer Christopher Wren, and Officer James Diamond, pursuant to Rule 42 (b) of the Federal Rules of Civil Procedure, that this Honorable Court order separate trials on the issue of liability and damages, including punitive damages as well as *Monell* liability. Bifurcation of liability and damages is imperative to avoid prejudice to the Defendant Officers, preclude jury confusion, and to serve the interests of judicial economy and that of the parties. Moreover, evidence of the financial net worth of each Defendant Officer should not be admitted at trial unless and until there is a determination that the Defendant Officer is liable and/or acted with malice, oppression, or fraud, which is not likely to occur given the facts and circumstances in this action. Furthermore, the issues of any *Monell* liability on the part of the City of Los Angeles should not be determined, or even considered, unless there is an underlying constitutional violation. Whether there is such a violation must first be determined in the first phase. If there is a finding of liability on the part of the City of Los Angeles, then the final phase would determine damages.

### II.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 11, 2005 Officers from LAPD's narcotics unit as well as gang enforcement officers from LAPD's Southwest Division went to a home located at 3791 South Cimarron Street for the purpose of serving a search warrant based upon suspected narcotics activity going on inside the house. When officers arrived, they were spotted by a person at the house who fled on foot when he saw the officers. Officers Christopher Wren and James Diamond immediately ran after the individual who had fled towards the backyard area of the house. As the officers ran to the backyard, they heard persons running out of the house into the backyard area. They also heard the sounds of persons jumping over the side and

back fences.

When Officers Wren and Diamond rounded the corner of the house and entered the backyard, they observed Brayland Randolph running away from them towards the side gate. The officers immediately noticed that Randolph had a handgun in his left hand pointed back at them. Both officers shouted "Gun!" to warn the other officers running up behind them that a suspect was armed with a gun. Randolph kept the gun pointed at the officers as he jumped the side fence into the adjacent yard. In fear for the lives, Officers Wren and Diamond opened fire on Randolph. Randolph was struck by several of the officers' bullets and collapsed on the ground of the adjacent yard. He was later pronounced dead. His firearm was recovered from the tall grass next to the fence he had jumped over. The coroner ruled the cause of dead was due to multiple gunshot wounds.

Randolph's minor children filed this lawsuit alleging the officers wrongfully shot and killed their father in violation of his 4th amendment rights. They further alleged that the City of Los Angeles maintained a policy, practice or custom of fostering the alleged unlawful conduct. The Defendant Officers deny these allegations, given that they shot Randolph in defense of their lives while Randolph pointed a loaded gun at them.

## III.
## THE COURT HAS DISCRETION TO ORDER SEPARATE TRIALS OF ANY SEPARATE ISSUE

The Court has broad discretion, pursuant to Rule 42 (b) of the Federal Rules of Civil Procedure, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, to order a separate trial of any claim or any issue. Bifurcation and trifurcation orders are commonplace, particularly in civil rights actions. Davis v. Mason County, 927 F2d 1473, 1479 (9th Cir. 1991). Rule 42 (b) provides discretion to order separate trials of liability and damages. Arthur Young & Company v. United States District Court, 549 F2d 686, 697-8 (9th Cir. 1997).

Federal Rules of Civil Procedure, Rule 42(b) provides:

> (b) Separate trials. <u>The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim,</u> cross-claim, counterclaim, or third party claim, <u>or of any separate issue or of any number of claims</u>, cross-claims, counterclaims, third party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed.R.Civ.P. 42(b) [emphasis added].

The practice of bifurcating police cases is well established in Ninth Circuit. See, e.g. *Grant v. City of Long Beach*, 315 F. 3d 1081, 1083 (9th Cir. 2002); *Ruvalcaba v. City of Los Angeles*, 167 F. 3d 514, 518 (9th Cir. 1999); *Quintanilla v. City of Downey*, 84 F. 3d 353, 354 (9th Cir. 1996); *Acosta v. City and County of San Francisco*, 83 F. 3d 1143, 1144 (9th Cir. 1996); *Allen v. City of Portland*, 73 F. 3d 232, 235 (9th Cir. 1995); *Larez v. City of Los Angeles*, 946 F. 2d 630, 635 (9th Cir. (1991); and *Murphy v. City of Long Beach*, 914 F. 2d 183, 185 (9th Cir. 1990).

Upon consideration of the facts in this action, there is a substantial possibility that the Defendant Officers will prevail on the liability issues. Thus, bifurcation of liability issues from damages, both punitive and compensatory, as well as from *Monell* liability, will result in a substantial savings of time and expense to the Court and to all parties involved. In addition, it will avoid the danger of the jury being prejudiced by sympathy and other extraneous issues, as well as the substantial prejudice caused to the Defendant Officers.

Questions regarding the extent of the injury sustained by the plaintiff, including psychological injury would be unnecessary should the individual Defendant Officers prevail on the liability issues. Evidence regarding the City of Los Angeles' alleged policies, customs or practices of fostering unlawful police conduct would further prejudice these two police officers who have no involvement in such policies or practices. Such testimony

during the liability phase of the trial would not only be contrary to the interests of judicial economy but would be substantially prejudicial to the jury's deliberations during the liability phase of the trial. In this regard, a jury may base its decision as to liability upon sympathy for the Plaintiffs and disregard the totality of circumstances of the underlying incident. Accordingly, in the interests of judicial economy, and in order to prevent any substantial prejudice to the Defendant Officers, the issues of *Monell* liability and damages should be tried separately from the liability phase of the trial.

At a minimum, punitive damages should be bifurcated from the liability phase. An award of punitive damages usually bears some proportional relationship to the financial condition of the Defendants. In this regard, the Defendant Officers anticipate that in making a case for punitive damages, Plaintiffs will require that the Defendant Officers take the witness stand and testify about their personal financial condition. Such testimony during the liability phase of the trial would not only be contrary to the interests of judicial economy, but would be substantially prejudicial to the jury's deliberations during the liability phase of the trial. In this regard, a jury may base its decision as to liability upon the Defendants' ability to pay damages. Accordingly, in the interests of judicial economy and in order to prevent any substantial prejudice to the Defendant Officers, the issue of punitive damages should be bifurcated from the liability phase of the trial.

## IV.
## ADJUDICATING DAMAGE ISSUES PRIOR TO A FINDING OF LIABILITY WOULD PREJUDICE THE DEFENDANT OFFICER AND LEAD TO JURY CONFUSION

At the very least, such intermingling of liability and damage evidence would be confusing to the jury and inure to the prejudice of the Defendant Officers. Federal courts have ordered the bifurcation of issues similar to the ones in the case at bar precisely for that reason. For example, in Hirst v. Gertzen, 676 F.2d 1252 (9th Cir. 1982), the Court ordered a separate trial in a civil rights case on the question of how the decedent died. On appeal, the Ninth Circuit ruled that the trial court did not abuse its discretion since it had ordered

bifurcation in order to simplify the issues for the jury, and to avoid unnecessary confusion which might occur from the introduction of evidence relevant only to the second phase of the trial. Id. at 1261.

In this case, trying the issues of individual officer liability separately from the alleged damages, is conducive to the judicial expedition and economy, and will avoid prejudice. In proving individual liability, the evidence centers on the specific complaint and actions which gave rise to this lawsuit. Ultimately, admitting evidence pertaining to any of Plaintiffs' purported damages could very well prejudice the individual Defendant Officers and confuse the jury in its consideration of whether the Officers' actions were constitutional. See Quintanilla, 84 F.3d at 356. Thus, the Defendant Officers request that the Court order that the issues of the individual officers' liability be tried separately from damages.

Moreover, the admission of such evidence is more inflammatory and prejudicial than it is probative. To hold otherwise, the Defendant Officers will be forced to claim that they did not violate Plaintiffs' constitutional rights, yet tell the jury "in case you don't believe me, here is my financial worth."

Recognizing the prejudice to defendants faced with this dilemma, one Court has noted that:

> The preferred method of accommodating the various interests is to delay trial as to the amount of award of punitive damages until the usual issues of liability and compensatory damages have been tried, along with the matter of whether the defendants' conduct warrants any award of punitive damages at all. If the jury finds in favor of the claimant on all of these issues, the parties should then be allowed to present evidence with respect to the amount of the punitive damage award.

Smith v. Lightening Bold Production, Inc., 861 F. 2d 363, 374 (2d Cir. 1988).

Evidence of the Defendant Officers' net worth should be precluded until and only if the jury finds that punitive damages should be assessed against him. The inherent prejudice

7

in permitting such evidence cannot be foreclosed if such evidence is placed before the jury. Accordingly, the liability portion of the trial should be tried separately from the damage issues.

## V.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request an Order (1) bifurcating liability from damages and punitive damages, and (2) precluding the introduction at trial of any of the Defendant Officers' financial condition or net worth unless and until the jury, if applicable, returns a verdict against the Defendant Officers' and awards Plaintiffs' damages.

DATED:    December 28, 2009

**CARMEN A. TRUTANICH,** City Attorney
**MICHAEL CLAESSENS,** Senior Asst. City Attorney
**CORY M. BRENTE,** Supv. Assistant City Attorney

By: _____
**DENISE C. JOHNSON**
Deputy City Attorney

*Attorneys for Defendants*
**CITY OF LOS ANGELES, OFFICER CHRISTOPHER WREN, OFFICER JAMES DIAMOND**
**United States District Judge**

8